OVIDIO LOZADA TORRES, demandante y peticionario, *v.* AGUSTÍN COLLAZO, demandado y recurrido.

*Número:* O-80-717      *Resuelto:* 6 de noviembre de 1981

*Alberto O. Lozada Colón*, abogado del peticionario; *Nelson Bassatt Álvarez*, abogado del recurrido.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

Para febrero de 1973 el demandante recurrente le alquiló al recurrido una máquina para lanzar relleno. Según los autos, se convino el alquiler por nueve días. El demandante describió así el total a pagarse por tal término: "Acordamos a razón de $175.00 diarios por día de trabajo más la transportación de la máquina que fueron $75.00 por la ida y $75.00 por el regreso, en total se contrató por $1750.00."

El 9 de febrero de 1979 el recurrente demandó por la referida cantidad al recurrido, quien interpuso la defensa

de prescripción. Tanto el Tribunal de Distrito como el Tribunal Superior sostuvieron la defensa. Acordamos revisar.

Los hechos descritos plantean importantes cuestiones de derecho, algunas de naturaleza novel en esta jurisdicción. La transacción ocurrida, ¿se rige por el Código de Comercio o por el Código Civil? De regir el Código Civil, ¿cuál es el plazo prescriptivo aplicable? ¿El quinquenal? ¿El de quince años? ¿Se extiende el plazo quinquenal a los arrendamientos de bienes muebles? ¿A qué propósitos obedece el establecimiento del plazo quinquenal? ¿Qué papel juega la periodicidad de los pagos en la determinación del plazo prescriptivo? ¿Existen figuras superficialmente análogas a la actual las cuales sea prudente distinguir para que no se entienda que las normas que aquí se sientan las gobiernan de por fuerza?

## 1. *El código aplicable*

El Código de Comercio español, según enmendado indirectamente por la Ley de Arrendamientos urbanos, protege especialmente el arrendamiento de locales de negocio. El arrendamiento del negocio en sí, no obstante, queda fuera del ámbito del Código de Comercio y está sometido al régimen del Código Civil. Igual ocurre, en España y Puerto Rico, con el arrendamiento común de bienes. El Código de Comercio no regula arrendamientos como el presente. R. Uría, *Derecho Mercantil*, 11ma ed., Madrid, 1976, págs 40, 71; J. L. Lacruz Berdejo, *Elementos de Derecho Civil*, Barcelona, Ed. Bosch, 1979, T. II, Vol. 3, pág. 85; *Blanch* v. *Sucn. Del Moral*, 57 D.P.R. 23, 27 (1940). Nuestra Ley de Arrendamiento de Propiedad Mueble, Ley Núm. 20 de 8 de mayo de 1973 (10 L.P.R.A. sec. 996 y ss), tampoco dispone un plazo especial de prescripción. Hay que acudir, por tanto, al Código Civil.

## 2. *Naturaleza de la prescripción extintiva de cinco años.*

El Art. 1866 de nuestro Código Civil, 31 L.P.R.A. sec. 5296, dispone:

Por el transcurso de cinco años prescriben las acciones para exigir el cumplimiento de las obligaciones siguientes:

1. La de pagar pensiones alimenticias.
2. La de satisfacer el precio de los arriendos, sean éstos de fincas rústicas o de fincas urbanas.
3. La de cualesquiera otros pagos que deban hacerse por años o en plazos más breves.

En estas disposiciones se funda la sentencia recurrida. El recurrente sostiene que la acción en este caso no prescribe hasta los quince años.

El recurrente argumenta que el artículo citado se aplica únicamente al arriendo de bienes inmuebles. La doctrina actual rechaza esta posición. En L. Díez Picazo, *La Prescripción en el Código civil*, Barcelona, Ed. Bosch, 1964, págs. 185–186 se expresa, por ejemplo:

El número segundo del artículo 1.966 [idéntico al 1866 nuestro] alude expresamente a los arrendamientos de fincas rústicas y de fincas urbanas. ¿Quiere ello decir que los demás arrendamientos quedan fuera del ámbito del precepto? Parece claro que no. La regla se aplica a los arrendamientos cualquiera que sea su objeto. Por lo tanto, lo mismo a los arrendamientos de bienes inmuebles que a los arrendamientos de muebles.

Véanse: L. Díez Picazo y A. Gullón, *Sistema de Derecho Civil*, Madrid, Ed. Tecnos, 1976, Vol. I, pág. 444; F. Puig Peña, *Compendio de Derecho Civil Español*, 3ra ed., Madrid, Ed. Pirámide, 1976, Vol. IV, pág. 56. El principio en que se funda esta norma es el de la analogía. ¿Qué razón justificaría, por ejemplo, utilizar el plazo quinquenal para el arrendamiento de una vivienda y el de quince años para el alquiler separado de unos muebles para esa misma vivienda? Puig Peña, *loc. cit.* Al no fijarse el término prescriptivo, hemos expresado, debe emplearse el más análogo. *Olmo* v. *Young & Rubicam of P.R., Inc.*, 110 D.P.R. 740 (1981).

Los antecedentes de la prescripción quinquenal, tal

como ésta se introdujo en el Código Civil español y en el nuestro se encuentran en una antigua ordenanza francesa de 1510 sobre la constitución de renta, que era el préstamo a interés de entonces. Las razones que la motivaron revelan el propósito de este género de prescripción extintiva, factor que es imprescindible precisar para su recta interpretación. Casado Pallarés nos dice sobre esta ordenanza:

> Esta ordenanza hacía constar que a causa de estos contratos de constitución de renta, muchos son reducidos a la pobreza y la ruina por los grandes atrasos que los compradores dejan correr sobre ellos, que ascienden a menudo a más que el capital, para el pago de los cuales necesitan vender y distraer todos sus bienes, cayendo ellos y sus hijos en la mendicidad y en la miseria. . . . J. M. Casado Pallarés, *La Prescripción de los Intereses*, 6 Rev. Crít. Der. Inmob. 458, 461 (1930).

Esta preocupación, extendida a otras circunstancias, llevó a la versión del plazo quinquenal en el código napoleónico. Casado Pallarés, *op. cit.*, págs. 461–464. En la propia España, con gran anterioridad al Código Civil, se expresó igual deseo de proteger a los deudores contra los acreedores que dejasen acumular sus créditos. Véase: Ley 10, Tít. IV, lib. III, de la Novísima Recopilación. El mismo propósito animó la redacción del Art. 1971 del proyecto de Código Civil de García Goyena, el cual anticipa la versión que había de aprobarse en España décadas más tarde. F. García Goyena, *Concordancias, motivos y comentarios del Código civil español*, reimpresión de la edición de 1852, Zaragoza, Ed. Cometa, S.A., 1974, pág. 1013.

Otras autoridades han añadido fundamentos a la responsabilidad quinquenal. Scaevola comenta:

> Se preocupa el legislador por estimular la actividad de los acreedores a que este artículo se refiere, cuando se trata de créditos que tienen plazos específicos para su reclamación, amenazándoles con la prescripción de las correspondientes acciones si éstas dejan de ejercitarse dentro de los cinco años que se señalan. . . .

El fundamento de esta especialidad del plazo, generalmente más breve que el concedido a las restantes acciones personales, es visto por Bonel, quien dice que hay que evitar que por la antigüedad de estas obligaciones se haga difícil probar que se cumplieron ya que, por su constancia casi perenne, ni se guardan resguardos, ni es fácil que se dejen pasar los términos cortos y precisos en que han de abonarse, sin su justa reclamación. . . . Q. M. Scaevola, *Código Civil*, Madrid, Ed. Reus, 1965, T. 32, Vol. II, pág. 833.

En *Agulló* v. *ASERCO*, 104 D.P.R. 244, 248 (1975), afirmamos, con referencia específica a los arriendos de viviendas, que "Las acciones prescriben porque no se debe dejar a las personas expuestas por toda la vida, o por largo tiempo, a ser demandadas cuando ya creen que ha sido aceptada o curada la situación que podía dar lugar a un litigio. Pasado largo tiempo generalmente han encauzado su vida y sus asuntos sin tener en mente y sin preveer [*sic*] la catástrofe que un pleito significa". Tanto *Agulló*, págs. 249–250, como Scaevola, *loc. cit.*, recalcan también la importancia del propósito de evitar el empobrecimiento de los deudores. Véanse: P. Engel, *Traité des Obligations en Droit Suisse*, Neuchatel, 1973, pág. 253; Encyclopédie Dalloz, *Prescription Civile*, suplemento de 1981, par. 342.

### 3. *El problema de la periodicidad*

La periodicidad de los pagos parece ser un denominador común de las acciones sujetas al plazo quinquenal. Ello ha llevado a algunos autores a exigirla indiscriminadamente como condición imprescindible para aplicar el plazo quinquenal en vez del de quince años. L. Díez Picazo y A. Gullón, *op. cit.*, pág. 444. Tal norma es generalmente aceptable cuando no choca con los objetivos de la acción quinquenal, mas no debe aplicarse mecánicamente, sin relación con los objetivos de este género de prescripción extintiva. En los arrendamientos se pacta usualmente el pago del precio por fracciones periódicas, pero también es habitual hacerlo al final del término, particularmente

cuando éste es corto. J. L. Lacruz Berdejo, *op. cit.*, pág. 91. Cuando se alquila un automóvil por un plazo fijo de tres días, a tanto por día, pagadero el total de la suma al final del arriendo, ¿puede en justicia al historial reseñado decretarse que la acción para el cobro de la deuda no prescribe hasta los quince años porque no se pactó el pago diario? ¿Acaso no es típico, o al menos común, cuando se arrienda un bien mueble por un término corto, proveer para el pago al final o parte al final y parte al comienzo, sin exigir pagos periódicos que son inconvenientes a menudo, cuando no imposibles, cuando se trata de una máquina y un deudor que van a estar lejos del acreedor?

En el caso de autos hay base de todos modos en el récord para interpretar que el arriendo se convino por una cantidad diaria, pagadera al final. Tal fue la conclusión del Tribunal de Distrito. El Tribunal Superior determinó que la máquina se arrendó por nueve días, pero sobre la base de una cantidad por día de uso, más el transporte. Aun en este último caso, los propósitos que inspiran la prescripción quinquenal nos impiden establecer en este pleito una distinción entre tales dos conclusiones. Se socavan los objetivos de la prescripción quinquenal si establecemos que ésta solo puede invocarse, en el caso de arriendos breves de bienes muebles, cuando se exijan pagos periódicos. Haríamos depender la prescripción en tal caso de la fórmula puramente verbal que se utilice.

■ Resolvemos en consecuencia que la prescripción extintiva de cinco años se extiende al arrendamiento de bienes muebles y que puede invocarse, al menos en el caso de arriendos por términos breves, aunque no medie la condición de pagos periódicos.

Debemos apuntar, por último, que las normas aquí expuestas se refieren estrictamente al tipo de contrato que nos ocupa, en las situaciones en que aquellas se producen. No nos estamos pronunciando sobre figuras afines al arrendamiento pero distintas a él, tales como el contrato

de *leasing*, palabra intraducible, en que se arrienda un bien con opción de compra, devolución o continuado arrendamiento bajo otras bases al final. Veánse: J. M. Martínez Val, *Derecho Mercantil*, Barcelona, Ed. Bosch, 1979, pág. 554 y ss.; Santos Briz, *Reflexiones en Torno al Leasing*, Rev. Der. Mercantil 533 (1970).

*Se confirmará la sentencia recurrida.*