EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Xerox Corporation<br><br>Peticionaria<br><br>v.<br><br>José A. Gómez Rodríguez y otros<br><br>Recurridos | 2019 TSPR 40<br><br>201 DPR ____<br><br>Certiorari |

Número del Caso:  AC-2015-101

Fecha: 1ro de marzo de 2019

Tribunal de Apelaciones:

      Región Judicial de Bayamón – Utuado Panel V

Abogados de la parte peticionaria:

      Lcdo. José A. B. Nolla Mayoral, III
      Lcda. Angelique M. Rodríguez Amadeo

Abogado de la parte recurrida:

      Lcdo. Orlando Aponte Rosario

Materia:  Contratos – Término de prescripción aplicable a la acción para reclamar plazos vencidos en virtud de un contrato de leasing.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Xerox Corporation

    Peticionaria

      v.

                    Núm. AC-2015-0101   *Certiorari*

José A. Gómez Rodríguez
y otros

    Recurridos

Opinión del Tribunal emitida por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico a 1 de marzo de 2019.

En el presente caso nos corresponde resolver si la causa de acción para reclamar las mensualidades adeudadas por un usuario, en virtud de un contrato de *leasing*, está sujeta a la prescripción quinquenal, o de cinco (5) años, dispuesta en el Art. 1866 del Código Civil de Puerto Rico, *infra*.

Luego de un detenido y minucioso examen de los hechos y el derecho aplicable, adelantamos que a este tipo de reclamación no le es de aplicación el referido término prescriptivo, pues la misma está sujeta a la prescripción ordinaria de quince (15) años establecida en el Art. 1864 del Código Civil de Puerto Rico, *infra*. Veamos.

I.

El 13 de mayo de 2014, Xerox Corporation (en adelante, "Xerox")[1] presentó una demanda en cobro de dinero y reposesión de bienes materiales contra la parte recurrida, Print Outlet.[2] En su demanda, Xerox alegó que el 22 de diciembre de 2008, las partes suscribieron un contrato de *leasing* en el que Print Outlet se comprometió al pago de $638.26 mensuales durante ochenta y cuatro (84) meses, correspondientes al arrendamiento de equipo y los cargos por copias.[3] Además, alegó que el contrato pactado contenía

---

[1] Xerox es una corporación que se dedica a la venta, alquiler y mantenimiento de equipos de oficina, incluyendo impresoras, fotocopiadoras, digitalizadoras (*scanners*), programas de computadoras, entre otros.

[2] José A. Gómez Rodríguez y su esposa Fulana de Tal, ambos por sí y en representación de la sociedad legal de bienes gananciales, y José L. Collazo Rosado y su esposa Mengana de Tal, ambos por sí y en representación de la sociedad legal de bienes gananciales (en conjunto "Print Outlet").

[3] El contrato también dispone alternativas para adquirir las unidades arrendadas al terminar el *leasing* o durante el mismo. En particular, dispone lo siguiente:

> The following options are available for each unit of Equipment leased under this Agreement. A. If not in default, you may purchase the Equipment "AS IS, WHERE IS" and WHITHOUT ANY WARRANTY AS TO CONTITION OR VALUE: (1) at the end of the lease term for the Purchase Option indicated on the face of this Agreement […], plus all applicable Taxes, or (2) at any time during the lease term by paying: (a) all amounts then due; (b) the remaining Minimum Payments in the Agreement's term less any unearned finance, maintenance, and supply charges (as reflected on Xerox's books records); (c) a reasonable disengagement fee calculated by Xerox that will not exceed fifteen percent (15%)of the amount in (b) above (said amount is available from Xerox upon request); (d) the applicable Purchase Option; and (e) all applicable Taxes. Apéndice del *certiorari*, pág. 138.

una cláusula de aceleración que, en caso de incumplimiento, facultaba a Xerox a acelerar el vencimiento de los pagos restantes y exigir la totalidad de la deuda.[4] Según adujo Xerox, Print Outlet había incumplido con el pago de las mensualidades desde mayo de 2009 hasta la fecha en que se presentó la demanda, el 13 de mayo de 2014, por lo que le adeudaba la suma de $38,626.82.

El 10 de septiembre de 2014, Print Outlet presentó una *Moción en cumplimiento de orden, solicitud de desestimación por prescripción*. En dicho escrito, alegó que el incumplimiento con los pagos mensuales adeudados había comenzado desde marzo de 2009. Asimismo, planteó que, por tratarse de una reclamación por el pago de los cánones de

---

[4] La referida cláusula lee de la siguiente forma:

> 23. DEFAULT AND REMEDIES. You will be in default under this agreement if (1) Xerox does not receive any payment within fifteen (15) days after the date is due, or (2) you breach any other obligation hereunder. If you default, Xerox, in addition to its other remedies (including the cessation of Maintenance Services), may require immediate payment, as liquidated damages for loss of bargain and not as penalty, of: (a) all amounts then due, plus interest on all amounts due from the due date until paid at the rate of one and one-half percent (1.5%) per month (not to exceed the maximum amount permitted by law); (b) the remaining Lease Minimum Payments in the Agreement's term less any unearned finance, maintenance, and supply charges (as reflected on Xerox's books and records); (c) a reasonable disengagement fee calculated by Xerox that will not exceed fifteen percent (15%) of the amount in (b) above (said amount is available from Xerox upon request); and (d) all applicable Taxes. You shall either (1) make the Equipment available for removal by Xerox when requested to do so by Xerox and, at the time of removal the Equipment shall be in the same condition as when delivered (reasonable wear and tear excepted), together with any related software, or (2) purchase the Equipment "AS IS, WHERE IS" and WHITHOUT ANY WARRANTY AS TO CONDITION OR VALUE by paying Xerox the Purchase Option and all applicable Taxes. Apéndice del *certiorari*, págs. 138-139.

un arrendamiento, la misma estaba sujeta al término prescriptivo quinquenal dispuesto en el Art. 1866 del Código Civil de Puerto Rico, *infra*, para el cobro de las obligaciones a plazo. Arguyó que -- al transcurrir cinco (5) años desde el comienzo del incumplimiento hasta la fecha en que se presentó la demanda -- la causa de acción había prescrito, por lo que solicitó la desestimación de la misma.

A dicha petición de desestimación, Xerox se opuso y argumentó que, debido a que en virtud de la cláusula de aceleración se consolidaron todos los plazos vencidos en un solo pago, el propósito de la acción era hacer efectiva la totalidad de la deuda. Por lo tanto, al extinguirse la periodicidad de los pagos, le era aplicable el término prescriptivo de quince (15) años que establece el Art. 1864 del Código Civil de Puerto Rico, *infra*. Planteó, además, que había enviado reclamaciones extrajudiciales a la parte demandada y que ésta había reconocido la totalidad de la deuda durante una vista celebrada el 28 de agosto de 2014.

Al respecto, en su réplica, Print Outlet alegó que los comprobantes de correo certificado presentados por Xerox no mostraban que las reclamaciones fueran dirigidas contra el codemandado José A. Rodríguez Gómez, por lo que éste nunca recibió una reclamación de la deuda en controversia. Además, argumentó que, aunque aceptó que la deuda estaba vencida desde marzo de 2009, ello no implicó una aceptación de que

la misma era exigible al momento de presentarse la reclamación de epígrafe.

Evaluados los planteamientos de las partes, el Tribunal de Primera Instancia emitió una *Resolución* en la cual declaró *no ha lugar* la solicitud de desestimación presentada por Print Outlet, por entender que la causa de acción no estaba prescrita. Ello, tras concluir que al acelerarse el vencimiento del contrato de *leasing* y hacerse exigible la totalidad de la deuda, la obligación quedó sujeta a la prescripción ordinaria de quince (15) años dispuesta en el Art. 1864 del Código Civil, *infra*. En desacuerdo con dicha determinación, Print Outlet solicitó reconsideración y la misma fue denegada.

Inconforme con el dictamen del foro primario, Print Outlet recurrió ante el Tribunal de Apelaciones mediante recurso de *certiorari*. En síntesis, planteó que el Tribunal de Primera Instancia erró al atender una reclamación por el cobro de cánones del arrendamiento de una cosa mueble como si se tratara de una acción por incumplimiento de un contrato de préstamo. Señaló, además, que el foro primario erró al aplicar el término prescriptivo de quince (15) años a una obligación a plazos.

Evaluados los planteamientos de las partes, el Tribunal de Apelaciones emitió una sentencia mediante la cual revocó la determinación del foro primario y ordenó la desestimación de la demanda. Dicho foro concluyó que, según

lo alegado por las partes, Print Outlet había realizado pagos con posterioridad a marzo de 2009,[5] lo que constituía un cumplimiento irregular de la obligación y hacía excesivamente oneroso exigir el pago de la totalidad de la deuda. Tras determinar que no procedía la activación de la cláusula de aceleración, el foro apelativo intermedio concluyó que la deuda reclamada constituía una obligación pactada a plazos sujeta a la prescripción de cinco (5) años del Art. 1866 del Código Civil, *infra*, por lo que la causa de acción para reclamar la misma estaba prescrita.

No conforme con lo resuelto por el Tribunal de Apelaciones, Xerox recurre ante nos, solicitando que revoquemos la *Sentencia* emitida por dicho foro.[6] En síntesis, plantea que el foro apelativo intermedio erró al obviar lo dispuesto en la cláusula de aceleración pactada por las partes en el contrato en controversia y al concluir que el término prescriptivo de cinco (5) años dispuesto en el Art. 1866 del Código Civil de Puerto Rico, *infra*, es el

---

[5] Es importante resaltar que esto no se alegó en el recurso presentado por Print Outlet ante el Tribunal de Apelaciones, pues todos sus señalamientos de error giraban en torno al planteamiento de prescripción. En su *Sentencia*, el foro apelativo intermedio indicó que este hecho se desprende de la prueba incluida en el expediente del caso. *Véase* Apéndice del *certiorari*, pág. 43.

[6] El presente recurso fue presentado como apelación. No obstante, en vista de que el dictamen recurrido surge de una petición de *certiorari* ante el Tribunal de Apelaciones, no se cumplen los requisitos necesarios para que el mismo sea revisado mediante apelación. Art. 3.002, Ley de la Judicatura, Ley Núm. 201-2003, 4 LPRA sec. 24s ("El Tribunal Supremo o cada una de sus Salas conocerá de los siguientes asuntos: […] (c) Mediante recurso de apelación, cuando se plantee la existencia de un conflicto entre sentencias del Tribunal de Apelaciones en **casos apelados** ante ese Tribunal".) (Énfasis suplido). Por ello, el recurso de epígrafe fue acogido como *certiorari* y así fue expedido.

aplicable al presente caso. A dicha solicitud, Print Outlet se opuso.

Contando con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II.

Como es sabido, la prescripción extintiva ha sido definida como "una institución de derecho sustantivo que extingue el derecho a ejercer determinada causa de acción". *Maldonado Rivera v. Suárez*, 195 DPR 182, 192 (2016); *S.L.G. García-Villega v. E.L.A.*, 190 DPR 799 (2014); *Fraguada Bonilla v. Hosp. Aux. Mutuo*, 186 DPR 365 (2012). Esta figura tiene como propósito castigar la inercia y estimular el ejercicio rápido de las acciones. *Meléndez Rivera v. CFSE*, 195 DPR 300 (2016); *Orraca López v. E.L.A.*, 192 DPR 31 (2014); *COSSEC v. González López*, 179 DPR 793 (2010).

La figura de la prescripción extintiva se rige por los principios que informa el Código Civil. *Fraguada Bonilla v. Hosp. Aux. Mutuo*, 186 DPR 365 (2012); *S.L.G. Serrano-Báez v. Foot Locker*, 182 DPR 824 (2011); *COSSEC v. González López*, *supra*; *Santos de García v. Banco Popular*, 172 DPR 759 (2007). Uno de esos principios claramente establece que en nuestro ordenamiento jurídico las acciones prescriben por el mero transcurso del tiempo fijado en ley. Art. 1861 del Código Civil de Puerto Rico, 31 LPRA sec. 5291; *Rivera Ruiz v. Mun. de Ponce*, 196 DPR 410 (2016); *Orraca López v. E.L.A.*, *supra*; *S.L.G. García-Villega v. E.L.A.*, 190 DPR 799

(2014); *Meléndez Guzmán v. Berríos López*, 172 DPR 1010 (2008); *Ortiz v. P.R. Telephone*, 162 DPR 715 (2004).

De conformidad con lo anterior, y en lo pertinente al caso que nos ocupa, es menester señalar que el Art. 1864 del Código Civil, 31 LPRA sec. 5294, establece un término prescriptivo de quince (15) años para aquellas acciones personales que no tengan señalado un término especial de prescripción, lo que también es conocido como la prescripción ordinaria. Específicamente, la precitada disposición legal sostiene que "[l]a acción hipotecaria prescribe a los veinte (20) años, y **las personales que no tengan señalado término especial de prescripción, a los quince (15)**". (Énfasis suplido) *Íd*.

Por su parte, el Art. 1866 del Código Civil, 31 LPRA sec. 5296, establece un término prescriptivo de cinco (5) años para aquellas acciones donde se reclama el pago de obligaciones pagaderas a plazo. Sobre el particular, el referido artículo dispone lo siguiente:

> Por el transcurso de cinco (5) años prescriben las acciones para exigir el cumplimiento de las obligaciones siguientes:
>
> (1) La de pagar pensiones alimenticias.
>
> (2) La de satisfacer el precio de los arriendos, sean éstos de fincas rústicas o de fincas urbanas.
>
> (3) **La de cualesquiera otros pagos que deban hacerse por años o en plazos más breves.** (Énfasis suplido) *Íd*.

Conviene señalar aquí que, en cuanto al alcance de la precitada disposición legal, también conocida como la prescripción quinquenal, este Tribunal se ha expresado en varias ocasiones. Por su importancia para la correcta disposición de las controversias ante nuestra consideración, procedemos a repasar lo allí establecido.

En esa dirección, comenzamos nuestro estudio analizando lo dispuesto por este Tribunal en el normativo caso de *Asoc. Empleados E.L.A. v. Guillén*, 116 DPR 425 (1985), una de las primeras oportunidades que tuvo este foro para, por voz del entonces Juez Presidente señor Trías Monge, evaluar el alcance del referido término prescriptivo, ello según la naturaleza de la obligación.

En el mencionado caso una empleada de la Universidad de Puerto Rico hizo un préstamo a la Asociación de Empleados del Estado Libre Asociado (AEELA). Cerca de diez (10) años después de que ésta renunciara a su empleo y cesara de hacer pagos al préstamo, AEELA le requirió la satisfacción del balance adeudado. Habiendo pasado juicio el Tribunal de Primera Instancia sobre la reclamación de AEELA, este Tribunal tuvo que determinar si el plazo quinquenal dispuesto en el Art. 1866 del Código Civil, *supra*, le era aplicable a la obligación en controversia y, por tanto, la acción instada por AEELA para reclamar su cumplimiento estaba prescrita. Resolver lo anterior requirió que este Tribunal entrara a evaluar las dos teorías, desarrolladas

hasta ese momento por diversos tratadistas del derecho civil, en cuanto a los escenarios en que aplica la mencionada prescripción quinquenal.

La primera de las teorías establecía que la prescripción quinquenal aplica tanto a obligaciones principales como accesorias, cuando éstas son pagaderas en plazos anuales o menores. *Íd.*, pág. 428. Esto incluía los pagos fraccionados o aplazados de una obligación principal. *Íd.*

De otra parte, la segunda de las teorías planteaba que **"la periodicidad de los pagos no activa en todo caso la prescripción quinquenal"**. (Énfasis suplido) *Íd.* Ello, pues dicha teoría establece una distinción entre las obligaciones únicas, que han sido fraccionadas y aquellas que constituyen una sucesión de prestaciones separables. Por tal razón, **"el cobro del principal adeudado, aunque su pago se haya dividido en plazos no mayores de un año, no está sujeto a la prescripción quinquenal"**. (Énfasis suplido) *Íd.*, pág. 429. Y es que, según esta doctrina adoptada por varios países civilistas como Francia, Italia y España, el propósito de la prescripción quinquenal no es escudar al deudor de préstamos y obligaciones de esa naturaleza, sino protegerle de la acumulación ruinosa de rentas, intereses, pensiones y otras prestaciones de esa índole. *Íd.*, pág. 430.

Así pues, discutidas en detalle ambas teorías, en *Asoc. Empleados E.L.A. v. Guillén*, *supra*, este Tribunal optó por adoptar la segunda de ellas. Al así hacerlo, resolvió que la deuda de capital en controversia en el referido caso estaba sujeta a la prescripción ordinaria de quince (15) años, por lo que la misma no estaba prescrita. No obstante, sí estaban prescritos los intereses anteriores a los cinco años precedentes a la presentación de la demanda, los cuales estaban sujetos a la prescripción quinquenal. *Íd.*, pág. 431.

Por último, es menester señalar aquí que en la referida Opinión se establece que, aún si se adoptase la primera teoría -- bajo la cual las obligaciones principales fraccionadas están sujetas a la prescripción quinquenal -- el término de cinco (5) años aplicaría solamente por el tiempo durante el cual la obligación fuese pagadera en plazos no mayores de un año. En ese sentido, el Tribunal expresó que "[a]l convertirse en exigible la totalidad de la deuda […], la obligación queda naturalmente sujeta a la prescripción ordinaria". *Íd.*, pág. 432.

Posteriormente, en *Campos v. Compañía de Fomento Industrial*, 153 DPR 137 (2001), este Tribunal reiteró la norma establecida en *Asoc. Empleados E.L.A. v. Guillén*, *supra*, y extendió la prescripción quinquenal a los intereses garantizados por hipoteca, independientemente de que los

mismos estén sujetos o no a una cláusula de aceleración. Allí el Tribunal expresó lo siguiente:

> [E]l hecho de que se ponga en vigor una cláusula de aceleración, no implica que cada partida, principal e intereses, pierda sus características individuales y se conviertan en un todo, pues el vencimiento adelantado de la deuda únicamente permite reclamar el balance del principal adeudado y los intereses devengados al momento de la reclamación; ello, debido al hecho de que **el principal continúa siendo una cuantía total y los intereses prestaciones separadas**.
>
> No estamos ante una cláusula de acumulación o capitalización, sino ante una cláusula que únicamente provee para la aceleración del vencimiento de la deuda, y la misma debe ser interpretada como tal. Por tal razón, somos del criterio que, independientemente de que se ponga en vigor la cláusula de aceleración, y se reclame una suma total de intereses, **éstos no pierden su característica de ser una obligación accesoria pagadera en plazos**. (Énfasis suplido) *Íd*., pág. 150.

Como podemos apreciar, esta Curia ha distinguido de forma diáfana el efecto de la prescripción según la naturaleza de la obligación. **La norma puede, pues, resumirse de la siguiente forma: la prescripción quinquenal aplica a aquellas obligaciones que consisten en una sucesión de prestaciones separables. Sin embargo, aquellas que constituyen una obligación única que ha sido fraccionada están sujetas a la prescripción ordinaria de quince (15) años.**

Esta dicotomía es más comprensible al contrastar una obligación única fraccionada, como lo es un préstamo, y una obligación periódica clásica, como lo es un arrendamiento

ordinario. Al obtener un préstamo, el deudor se obliga a pagar la totalidad del dinero que tomó prestado, independientemente de que lo haga en varios plazos, es decir, de forma fraccionada. Sin embargo, las mensualidades de un arrendamiento se van devengando a medida que trascurre el tiempo. En este tipo de contrato cada canon es autónomo y se hace efectivo según transcurre el periodo por el cual responde el mismo. Es decir, a diferencia del contrato de préstamo -- donde, tras el incumplimiento del deudor, el prestamista sigue siendo acreedor de la totalidad del principal prestado -- en un arrendamiento ordinario, el arrendador sólo puede exigir el pago de los cánones vencidos adeudados, mas no los cánones futuros. Por tal razón, este Tribunal ha reconocido que los arrendamientos, ya sean de cosas muebles o inmuebles, constituyen obligaciones a plazos sujetas a la prescripción quinquenal dispuesta en el Art. 1866 del Código Civil, *supra*. *Asoc. Empleados E.L.A. v. Guillén*, *supra*; *Lozada Torres v. Collazo*, 111 DPR 702 (1981); *Lozada Blanch v. Sucn. Del Moral*, 57 DPR 23 (1940).

Ahora bien, lo anterior no dispone del caso ante nos. Ello, pues este Tribunal ha reconocido que en sus pronunciamientos sobre este particular no están incluidas "las figuras afines al arrendamiento[,] pero distintas a él, tales como **el contrato de leasing**, palabra intraducible, en que se arrienda un bien con opción de compra, devolución o continuado arrendamiento bajo otras bases al final".

(Énfasis suplido). *Lozada Torres v. Collazo*, *supra*, págs. 707-708.

Siendo ello así, y por considerarlo en extremo importante para la correcta disposición de las controversias ante nuestra consideración, corresponde estudiar más a fondo la mencionada figura del *leasing*. Pasamos a así hacerlo.

III.

El *leasing* es un contrato *sui géneris* que posee elementos de otras figuras jurídicas en el ámbito del derecho civil, mas se diferencia de ellas. Por ello, no puede equipararse al arrendamiento ordinario, al depósito, al préstamo, ni a otras figuras afines, aunque comparta características semejantes. *Andreu Fuentes y otros v. Popular Leasing*, 184 DPR 540 (2012); *Class v. Vehicle Eqmnt. Leasing Co.*, 143 DPR 186 (1997); *Meyers Bros. v. Gelco*, 114 DPR 116 (1983).

Este tipo de contrato consiste en una relación tripartita en la cual el llamado arrendador sirve como intermediario financiero entre un proveedor o suplidor de bienes y el usuario. En esta relación contractual, la entidad financiera adquiere un bien elegido por el usuario y transfiere a este último su uso a cambio del pago de cuotas periódicas durante la vida del contrato. *Andreu Fuentes y otros v. Popular Leasing*, *supra*; *Class v. Vehicle Eqmnt. Leasing Co.*, *supra*; *Meyers Bros. v. Gelco*, *supra*.

*Véase*, además, M. Godreau, *El leasing mobiliario y otros contratos afines a la luz de la adopción del Código Uniforme de Comercio de los EE.UU. en el derecho puertorriqueño*, San Juan, Ed. Dictum, 1999, pág. 35.

En otras palabras, en este tipo de contrato se establecen dos relaciones jurídicas: una compraventa entre el arrendador financiero y el proveedor del bien arrendado, y una especie de arrendamiento entre el arrendador financiero y el usuario.[7] *Íd.*; L. Díez-Picazo, *Fundamentos del Derecho Civil Patrimonial*, 1ra ed., Madrid, Ed. Aranzadi, 2010, T. IV, pág. 342. Durante el *leasing*, el arrendador financiero retiene el título de propiedad sobre la cosa arrendada y el usuario disfruta de la posesión y uso de la misma. *Andreu Fuentes y otros v. Popular Leasing*, *supra*; *CNA Casualty of P.R. v. Torres Díaz*, 141 DPR 27 (1996); *Nieves Vélez v. Bansander Leasing Corp.*, 136 DPR 827 (1994); *Meyers Bros. v. Gelco*, *supra*. Por lo general, al vencerse el término del contrato, el usuario puede elegir entre adquirir el bien por el valor residual, volver a arrendarlo o entregarlo al arrendador. Art. 19 de la Ley para Regular los Contratos de Arrendamiento, Ley Núm. 76 de

---

[7] El contrato ante nuestra consideración se asemeja más a la modalidad conocida como *leasing operativo*, dónde el arrendador generalmente es el fabricante o distribuidor del material. En dicha modalidad de *leasing* se "le cede a otra [persona] el uso prefijado y limitado de un determinado bien, normalmente de tipo estándar, contra el pago de unos cánones de arrendamiento que comprenden, tanto la financiación de la puesta a disposición del equipo[,] como de los gastos de entretenimiento y reparación […]. C. Vidal Blanco, *El Leasing, una innovación en la técnica de la financiación*, Madrid, Ministerio de Hacienda, 1977, pág. 78. Esta distinción, sin embargo, no cambia la naturaleza del contrato para efectos de la aplicación de la prescripción quinquenal.

13 de agosto de 1994, 10 LPRA sec. 2417; *Andreu Fuentes y otros v. Popular Leasing, supra; Meyers Bros. v. Gelco, supra.*

Es importante resaltar que **la "finalidad económica [del *leasing*] no radica en la adquisición del dominio sobre el bien mueble objeto del contrato, sino en el financiamiento del uso de equipo o maquinaria** que necesita un industrial, un comerciante o un profesional para la operación de su negocio o industria". (Énfasis suplido) Godreau, *op. cit.*, pág. 3. A diferencia del arrendamiento clásico -- donde la titularidad sobre el bien arrendado es un interés fundamental para el arrendador -- en el *leasing* la unidad arrendada sólo representa una garantía para el cobro de la acreencia. Ello, pues el negocio y función empresarial del financiador no es la de propietario de equipos sino la de facilitador de capital. *Íd.*, págs. 21-22.

Sobre este particular, el tratadista Luis Díez-Picazo comenta lo siguiente:

> [N]o se trata por lo menos de un arrendamiento típico, puesto que en éste la cosa que se cede en uso pertenece al arrendador con anterioridad a la perfección del contrato, mientras que en el *leasing* la cosa se adquiere por la entidad financiera exclusivamente para cederla al cliente en un arrendamiento que se encuentra perfectamente pactado en sus líneas más generales, aunque los documentos no se hayan todavía suscrito. De ello se deduce que el cedente del uso en este caso, carece de interés en la cosa y que **la causa del contrato más que ceder el uso es financiar la operación de adquisición por el usuario.** (Bastardillas en el

original y énfasis suplido) Díez-Picazo, *op. cit.*, pág. 341.

Por tal razón, la renta que paga el usuario no corresponde realmente al uso y disfrute del bien, como sucede en un arrendamiento clásico, sino que cubre el precio de la adquisición. *Íd*. **Así pues**, <u>**el propósito de las cuotas periódicas del *leasing* "es recuperar la inversión total del arrendador"**</u>.[8] (Énfasis suplido) *Andreu Fuentes y otros v. Popular Leasing*, *supra*, pág. 556; *CNA Casualty of P.R. v. Torres Díaz*, *supra*. Por ello, este Tribunal ha reconocido que "la entrega del bien previo a la terminación del contrato o el pago de las sumas pendientes no cubre los costos incurridos por el arrendador, por lo que un arrendatario debe ser responsable por su obligación total según pactada". *Andreu Fuentes y otros v. Popular Leasing*, *supra*, pág. 560; *Class v. Vehicle Eqmnt. Leasing Co.*, *supra*. Entender lo anterior es esencial para la correcta disposición de las controversias ante nuestra consideración.

IV.

Por último, precisa señalar que nuestro Código Civil dispone ciertas garantías del derecho de crédito, dentro de

---

[8] En *Andreu Fuentes v. Popular Leasing*, *supra*, en virtud de un contrato de *leasing*, el usuario de un vehículo se obligó incondicionalmente a pagar todas las mensualidades sin importar lo que sucediera, incluyendo la eventualidad de que el bien fuera robado o tuviera desperfectos. Por tal razón, este Tribunal resolvió que la presencia de defectos en el vehículo no alteraba el derecho de la entidad financiera de cobrar la financiación del mismo en su totalidad, tal como fue pactado.

las cuales se encuentra aquella que conocemos como la cláusula penal. Arts. 1106-1109 del Código Civil de Puerto Rico, 31 LPRA secs. 3131-3134. La misma ha sido definida como "una convención accesoria a una obligación principal mediante la cual se promete realizar una prestación, generalmente pecuniaria, para el caso en que una de las partes no cumpla o cumpla mal o irregularmente lo prometido". *Coop. Sabaneña v. Casiano Rivera*, 184 DPR 169 (2011) (Citando J.R. Vélez Torres, *Derecho de Obligaciones*, 2da ed., San Juan, Programa de Educación Jurídica Continua de la Facultad de Derecho de la U.I.A., 1997, pág. 299).

En diversas ocasiones, este Tribunal ha reconocido las dos funciones principales de la cláusula penal, a saber: (1) asegurar el cumplimiento de una obligación y (2) evaluar por anticipado los perjuicios que habría de ocasionar al acreedor el incumplimiento de la obligación. *Coop. Sabaneña v. Casiano Rivera*, *supra*; *Class v. Vehicle Eqmnt. Leasing Co.*, *supra*; *R.C. Leasing Corp. v. Williams Int. Ltd.*, 103 DPR 163 (1974); *Simonet v. Ingravídez*, 90 DPR 1 (1964). *Véase*, además, J. Puig Brutau, *Fundamentos de Derecho Civil*, 3ra ed., Barcelona, Ed. Bosch, 1985, T.1, V.2, págs. 461-464.

Debido a su fin punitivo, la cláusula penal permite que la evaluación de los daños del acreedor sobrepase la medida real del daño, de forma que este exceso tenga el efecto de presionar al deudor a realizar el cumplimiento

específico de la obligación para evitar pagar una indemnización mayor a la prestación a la cual se obligó. *Class v. Vehicle Eqmnt. Leasing Co.*, *supra*; *R.C. Leasing Corp. v. Williams Int. Ltd.*, *supra*. Sin embargo, en ocasiones, "[l]a prestación garantizadora puede ser tan desorbitada y excesiva que se convierta en una fianza impropia o caparra". *R.C. Leasing Corp. v. Williams Int. Ltd.*, *supra*, pág. 170.

A los fines de remediar esta preocupación, el Art. 1108 del Código Civil, 31 LPRA sec. 3133, faculta a los tribunales para "modific[ar] equitativamente la pena cuando la obligación principal hubiera sido en parte o irregularmente cumplida por el deudor". Cabe señalar, sin embargo, que:

> **La facultad judicial de moderación debe usarse sólo con gran cautela y notoria justificación.** […] Al resultado de frenar el predominio absoluto de la autonomía de la voluntad, bien moderando los efectos de los contratos, ya limitando su obligatoriedad según normas de buena fe, ha de llegarse **únicamente en circunstancias extraordinarias, como medio de templar su excesiva onerosidad para el obligado, o la desorbitada desproporción.** (Énfasis suplido) *Jack's Beach Resort, Inc. v. Cía. Turismo*, *supra*, pág. 350.

Asimismo, si bien esta disposición permite moderar la pena, ello debe hacerse **cuando la desproporción entre la infracción del contrato y la pena convencional es evidente.** *WRC Props. Inc v. Santana*, 116 DPR 127 (1985); *Jack's Beach Resort, Inc. v. Cía. Turismo*, 112 DPR 344 (1982).

En lo pertinente al *leasing*, se ha expresado que la cláusula de aceleración que se incluye en este tipo de contrato, constituye una cláusula penal, toda vez que, al anticipar la exigibilidad inmediata del resto de los plazos pendientes en caso de incumplimiento, tiene una función coercitiva para el deudor. *Class v. Vehicle Eqmnt. Leasing Co.*, *supra*; *Jack's Beach Resort, Inc. v. Cía. Turismo*, 112 DPR 344 (1982). *Véase*, además, C. Vidal Blanco, *El Leasing, una innovación en la técnica de la financiación*, Madrid, Ministerio de Hacienda, 1977, págs. 101-102.

No obstante, debemos resaltar que en *Class v. Vehicle Eqmnt. Leasing Co.*, *supra*, al analizar una cláusula de aceleración en un contrato de *leasing*, este Tribunal aplicó los principios antes esbozados, concluyendo que no procedía moderar la misma de tal manera que ésta se eliminara totalmente. En dicha ocasión, prestó particular atención al hecho de que "la cantidad reclamada por las arrendadoras pretende que éstas recuperen su inversión, toda vez que la entrega del bien, previa a la terminación del contrato, no cubre las costas y gastos incurridos por el arrendador".[9] *Íd.*, pág. 206.

---

[9] En la Opinión de referencia el Tribunal atendió varios casos consolidados, los cuales surgían de contratos de *leasing* de automóviles. Los contratos en cuestión contenían una cláusula que disponía que "en caso de incumplimiento en el pago de los cánones, el arrendador tendría derecho a efectuar la reposesión de la unidad, debiendo el arrendatario pagar el balance de los cánones pactados durante todo el término del arrendamiento". En todos los casos consolidados, antes de culminar el arrendamiento, los usuarios entregaron voluntariamente los vehículos a las entidades financieras, quienes las aceptaron y procedieron a venderlas. Al obtener cantidades

Es, pues, a la luz de la normativa antes expuesta que procedemos a disponer de las controversias ante nuestra consideración.

V.

Como sabemos, en el presente caso la controversia surge de un contrato de *leasing*. En el mismo Xerox se obligó a poner cierto equipo de fotocopias a la diposición de Print Outlet, a cambio del pago de unas cuotas mensuales ascendentes a $638.26 por un término de ochenta y cuatro (84) meses, durante o luego del cual Print Outlet tendría la opción de adquirir las unidades arrendadas, pagando el valor residual de las mismas.

Como ha quedado claramente demostrado, el contrato de *leasing* tiene una naturaleza distinta a la del arrendamiento clásico. Ello, pues no se trata de una serie de prestaciones autónomas, sino de una obligación única -- la de pagar la inversión total hecha por el arrendador para financiar la adquisición y uso del bien arrendado -- que ha sido fraccionada en varios plazos.

Siendo ello así, por tratarse de una obligación única, a la acción para reclamar los plazos vencidos del contrato de *leasing* instada por Xerox en contra de Print Outlet no

menores al valor residual adeudado, reclamaron a los arrendatarios el balance adeudado.

Ante las querellas presentadas por éstos, el Departamento de Asuntos del Consumidor (DACo) determinó que la entrega del vehículo por el arrendatario y la aceptación voluntaria por la arrendadora le impedían a ésta última instar una acción de cobro por la diferencia entre el balance de su cuenta y el precio de venta de la unidad.

le es de aplicación la prescripción quinquenal dispuesta en el Art. 1866 del Código Civil, *supra*. La misma está sujeta a la prescripción ordinaria del Art. 1864, *supra*. Se cometió, pues, el error señalado.[10]

Ahora bien, resuelta la controversia en torno al tema de la prescripción, aún es necesario atender la determinación del Tribunal de Apelaciones de hacer inoperante la cláusula de aceleración. Como recordaremos, dicho foro razonó que el hecho de que Print Outlet hubiera realizado pagos con posterioridad a marzo de 2009 hacía excesivamente oneroso exigir el pago de la totalidad de la deuda, por dicha parte haber realizado un cumplimiento irregular de la obligación. No tiene razón.

Precisa recordar que, al ejercer su facultad para modificar una cláusula penal pactada por voluntad de las partes, los tribunales deben hacerlo con gran cautela y como medida extraordinaria para atemperar su excesiva onerosidad o desorbitada desproporción.

En el presente caso, no se desprende de las alegaciones que la cláusula de aceleración produzca una desproporción

---

[10] El Tribunal Supremo de España ha reconocido la aplicación de la prescripción quinquenal a las cuotas mensuales del contrato de *leasing*. Véanse, STS 24 mayo 1997; STS 22 julio 2002. Cabe resaltar, sin embargo, que bajo el razonamiento empleado por el Tribunal Supremo español en las referidas sentencias, el componente arrendaticio del contrato de *leasing* es equiparable al arrendamiento ordinario, puesto que "la *ratio legis* es idéntica". Esto es objeto de debate en el derecho español, por lo que existen varias corrientes jurisprudenciales en cuanto al término prescriptivo aplicable las mensualidades del contrato de *leasing*. Ahora bien, en nuestra jurisdicción está claramente establecido que el contrato de *leasing* tiene una naturaleza distinta a la del arrendamiento ordinario y otras figuras afines. *Andreu Fuentes y otros v. Popular Leasing*, *supra*; *Class v. Vehicle Eqmnt. Leasing Co.*, *supra*; *Meyers Bros. v. Gelco*, *supra*.

desorbitada, ya que Xerox no está exigiendo siquiera una cantidad mayor a la pactada en el contrato, sino la totalidad del balance adeudado en virtud del mismo. Tampoco surge que el acelerar el vencimiento de las mensualidades restantes, según fue acordado, haga excesivamente oneroso el cumplimiento de la obligación contraída por Print Outlet. Ello es aun más evidente, al considerar que este asunto ni siquiera formó parte de las controversias traídas ante la consideración del Tribunal de Apelaciones.

A tono con lo anterior, no procedía la modificación de la cláusula de aceleración en cuestión, ni mucho menos declarar improcedente su activación. Al así hacerlo, erró el foro apelativo intermedio en su proceder.

VI.

Por los fundamentos antes expuestos, revocamos en su totalidad la determinación del Tribunal de Apelaciones y devolvemos el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de conformidad con lo aquí dispuesto.

Se dictará Sentencia de conformidad.

Ángel Colón Pérez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Xerox Corporation

   Peticionaria

       v.

José A. Gómez Rodríguez
y otros

   Recurridos

Núm. AC-2015-0101   *Certiorari*

SENTENCIA

En San Juan, Puerto Rico a 1 de marzo de 2019.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca en su totalidad la determinación del Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de conformidad con lo aquí dispuesto.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez y la Juez Asociada señora Rodríguez Rodríguez no intervinieron. El Juez Asociado señor Feliberti Cintrón está inhibido.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo